W.E. Levers Checks

W.E. Levers Checks

| Check # | Date | Amount | Company |
|---|---|---|---|
| 28726 | 1/9/2008 | $ 4,198.33 | W.E. Levers |
| 28635 | 1/17/2008 | $ 5,311.00 | W.E. Levers |
| 28633 | 1/15/2008 | $ 6,310.97 | W.E. Levers |
| 28785 | 1/30/2008 | $ 8,173.08 | W.E. Levers |
| 28841 | 2/18/2008 | $ 4,579.09 | W.E. Levers |
| 28842 | 2/22/2008 | $ 4,171.19 | W.E. Levers |
| 28858 | 2/29/2008 | $ 6,118.45 | W.E. Levers |
| 28874 | 3/4/2008 | $ 4,536.98 | W.E. Levers |
| 28879 | 3/10/2008 | $ 5,873.49 | W.E. Levers |
| 28938 | 3/11/2008 | $ 3,870.98 | W.E. Levers |
| 28944 | 3/17/2008 | $ 4,811.67 | W.E. Levers |
| 29017 | 4/4/2008 | $ 4,380.00 | W.E. Levers |
| 29025 | 4/12/2008 | $ 6,380.00 | W.E. Levers |
| 29083 | 4/14/2008 | $ 5,189.32 | W.E. Levers |
| 29190 | 5/12/2008 | $ 5,636.90 | W.E. Levers |
| 29265 | 5/22/2008 | $ 7,352.36 | W.E. Levers |
| 29014 | 3/31/2008 | $ 4,810.67 | W.E. Levers |
| 29277 | 5/28/2008 | $ 8,630.96 | W.E. Levers |
| 29324 | 6/5/2008 | $ 5,839.27 | W.E. Levers |
| 29332 | 6/9/2008 | $ 7,310.81 | W.E. Levers |
| 29360 | 6/12/2008 | $ 7,222.00 | W.E. Levers |
| 29369 | 6/16/2008 | $ 5,673.26 | W.E. Levers |
| 29412 | 6/25/2008 | $ 6,760.00 | W.E. Levers |
| 29417 | 6/30/2008 | $ 7,568.92 | W.E. Levers |
| 29460 | 7/3/2008 | $ 6,389.25 | W.E. Levers |
| 29468 | 7/8/2008 | $ 8,325.11 | W.E. Levers |
| 29505 | 7/17/2008 | $ 6,874.92 | W.E. Levers |
| 29519 | 7/24/2008 | $ 6,839.50 | W.E. Levers |
| 29728 | 9/18/2008 | $ 7,311.52 | W.E. Levers |
| 29890 | 10/21/2008 | $ 7,822.61 | W.E. Levers |
| 29934 | 10/30/2008 | $ 7,821.23 | W.E. Levers |
| 30006 | 11/13/2008 | $ 8,702.29 | W.E. Levers |
| 30092 | 12/9/2008 | $ 7,892.98 | W.E. Levers |
| 30075 | 12/2/2008 | $ 8,673.45 | W.E. Levers |
| 30365 | 2/12/2009 | $ 4,688.23 | W.E. Levers |
| 30490 | 3/12/2009 | $ 3,611.78 | W.E. Levers |
| 30440 | 2/26/2009 | $ 4,932.56 | W.E. Levers |
| 30557 | 3/26/2009 | $ 4,196.91 | W.E. Levers |
| 30629 | 4/15/2009 | $ 6,923.00 | W.E. Levers |
| 30790 | 5/28/2009 | $ 4,381.26 | W.E. Levers |
| 30727 | 5/7/2009 | $ 5,822.78 | W.E. Levers |
| 30776 | 5/21/2009 | $ 3,882.00 | W.E. Levers |
| 30822 | 4/14/2009 | $ 4,200.00 | W.E. Levers |
| 31010 | 7/23/2009 | $ 6,700.23 | W.E. Levers |
| 30900 | 6/25/2009 | $ 5,592.78 | W.E. Levers |

WESCOTT_01888

W.E. Levers Checks

| | | | | |
|---|---|---|---|---|
| 30933 | 7/7/2009 | $ | 4,328.98 | W.E. Levers |
| 30969 | 7/14/2009 | $ | 6,411.02 | W.E. Levers |
| 31075 | 8/6/2009 | $ | 4,611.88 | W.E. Levers |
| 31244 | 9/17/2009 | $ | 7,654.22 | W.E. Levers |
| 31187 | 9/3/2009 | $ | 110.00 | W.E. Levers |
| 31190 | 9/4/2009 | $ | 4,763.28 | W.E. Levers |
| 31317 | 10/1/2009 | $ | 5,382.69 | W.E. Levers |
| 31378 | 10/15/2009 | $ | 5,712.88 | W.E. Levers |
| 31244 | 9/17/2009 | $ | 7,654.22 | W.E. Levers |
| 31470 | 11/11/2009 | $ | 6,385.23 | W.E. Levers |
| 31609 | 12/18/2009 | $ | 4,523.11 | W.E. Levers |
| 31530 | 11/25/2009 | $ | 5,273.00 | W.E. Levers |
| | Total | | $ 335,104.60 | |

WE Levers checks from Vendor Report

| Invoice Number | Date | Amount | | Company |
|---|---|---|---|---|
| 4432A-1 | 12/23/2009 | $ | 5,261.96 | W.E.Levers (from Vendor Report) |
| 5689A-1 | 1/4/2010 | $ | 6,074.52 | W.E.Levers (from Vendor Report) |
| 5990 A | 3/4/2010 | $ | 5,432.09 | W.E.Levers (from Vendor Report) |
| 60011-C | 4/4/2010 | $ | 6,189.43 | W.E.Levers (from Vendor Report) |
| 6537-po | 5/4/2010 | $ | 2,389.32 | W.E.Levers (from Vendor Report) |
| 60332A | 6/1/2010 | $ | 4,763.00 | W.E.Levers (from Vendor Report) |
| 61882A | 6/4/2010 | $ | 6,129.02 | W.E.Levers (from Vendor Report) |
| 62330A | 6/20/2010 | $ | 4,281.22 | W.E.Levers (from Vendor Report) |
| 70127A- | 6/20/2010 | $ | 6,843.10 | W.E.Levers (from Vendor Report) |
| 70189 B | 7/20/2010 | $ | 7,182.93 | W.E.Levers (from Vendor Report) |
| 87909A-1 | 8/2/2010 | $ | 5,360.00 | W.E.Levers (from Vendor Report) |
| 71638A | 8/2/2010 | $ | 6,326.43 | W.E.Levers (from Vendor Report) |
| 89761B | 9/1/2010 | $ | 5,882.28 | W.E.Levers (from Vendor Report) |
| 4432A-1 | 9/14/2010 | $ | 5,887.69 | W.E.Levers (from Vendor Report) |
| A-07870-1 | 9/15/2010 | $ | 5,911.23 | W.E.Levers (from Vendor Report) |
| B-09277-A | 10/2/2010 | $ | 6,813.45 | W.E.Levers (from Vendor Report) |
| 893451 | 10/15/2010 | $ | 6,381.00 | W.E.Levers (from Vendor Report) |
| 1274432 | 10/26/2010 | $ | 7,855.32 | W.E.Levers (from Vendor Report) |
| 681911A | 11/2/2010 | $ | 6,381.23 | W.E.Levers (from Vendor Report) |
| 89231-A | 11/28/2010 | $ | 6,180.23 | W.E.Levers (from Vendor Report) |
| 78921 | 12/18/2010 | $ | 7,118.29 | W.E.Levers (from Vendor Report) |
| 89267B2 | 12/28/2010 | $ | 6,245.91 | W.E.Levers (from Vendor Report) |
| W-56188-A1 | 1/8/2011 | $ | 6,854.11 | W.E.Levers (from Vendor Report) |
| 981231A | 1/21/2011 | $ | 6,534.44 | W.E.Levers (from Vendor Report) |
| 78329A | 2/18/2011 | $ | 7,190.23 | W.E.Levers (from Vendor Report) |
| 589012-A1 | 2/22/2011 | $ | 6,209.85 | W.E.Levers (from Vendor Report) |
| 87230A- | 3/3/2011 | $ | 5,338.13 | W.E.Levers (from Vendor Report) |
| 59812A-1 | 3/11/2011 | $ | 6,198.02 | W.E.Levers (from Vendor Report) |
| 67123-1 | 3/17/2011 | $ | 6,882.12 | W.E.Levers (from Vendor Report) |

Total:          $ 176,096.55

WESCOTT_01889

06-07 From AP

2006-2007 Fraud From Accounts Payable

| Date | Stub/Check N | Amount | Company |
|---|---|---|---|
| 7/14/2006 | 26382 | $ 7,350.00 | W.E. Levers |
| 7/17/2006 | 26429 | $ 8,682.69 | Icon International |
| 7/17/2006 | 26445 | $ 5,968.71 | Netversant-Delaware |
| 8/10/2006 | 26516 | $ 7,651.25 | Icon International |
| 9/11/2006 | 26669 | $ 8,693.65 | Netversant-Delaware |
| 10/3/2006 | 26768 | $ 4,158.61 | W.E. Levers |
| 10/17/2006 | 26798 | $ 1,480.54 | W.E. Levers |
| 10/25/2006 | 26857 | $ 8,341.71 | Icon International |
| 11/22/2006 | 26986 | $ 6,855.10 | Icon International |
| 12/5/2006 | 27023 | $ 7,785.69 | Netversant-Delaware |
| 12/20/2006 | 27088 | $ 5,932.69 | Icon International |
| 12/20/2006 | 27099 | $ 3,852.39 | W.E. Levers |
| 1/4/2007 | 27111 | $ 2,931.72 | W.E. Levers |
| 1/11/2007 | 27165 | $ 9,253.69 | Icon International |
| 1/24/2007 | 27204 | $ 3,840.00 | W.E. Levers |
| 1/30/2007 | 27218 | $ 4,111.73 | W.E. Levers |
| 2/12/2007 | 27277 | $ 3,289.90 | W.E. Levers |
| 2/19/2007 | 27297 | $ 3,495.96 | W.E. Levers |
| 2/23/2007 | 27323 | $ 7,853.69 | Icon International |
| 3/9/2007 | 27390 | $ 7,683.09 | Icon International |
| 3/16/2007 | 27414 | $ 1,811.82 | W.E. Levers |
| 3/22/2007 | 27458 | $ 8,976.34 | Icon International |
| 4/5/2007 | 27480 | $ 3,874.57 | W.E. Levers |
| 4/10/2007 | 27531 | $ 5,268.57 | Icon International |
| 4/20/2007 | 27588 | $ 3,879.06 | W.E. Levers |
| 5/4/2007 | 27624 | $ 7,689.69 | Icon International |
| 5/11/2007 | 27683 | $ 2,989.09 | W.E. Levers |
| 5/18/2007 | 27714 | $ 7,511.89 | Icon International |
| 5/29/2007 | 27752 | $ 7,142.26 | Icon International |
| 6/6/2007 | 27806 | $ 3,863.21 | W.E. Levers |
| 6/15/2007 | 27829 | $ 6,841.52 | Icon International |
| 6/25/2007 | 27876 | $ 7,138.47 | Icon International |
| 6/28/2007 | 27942 | $ 6,873.57 | Icon International |
| 7/3/2007 | 27896 | $ 3,863.92 | W.E. Levers |
| 7/10/2007 | 27910 | $ 6,831.11 | W.E. Levers |
| 7/16/2007 | 27960 | $ 4,710.89 | W.E. Levers |
| 8/8/2007 | 28064 | $ 7,561.89 | Icon International |
| 8/17/2007 | 28113 | $ 6,821.38 | Icon International |
| 8/28/2007 | 28162 | $ 6,709.39 | Icon International |
| 9/11/2007 | 28216 | $ 7,768.23 | Icon International |
| 10/1/2007 | 28313 | $ 6,550.36 | Icon International |
| 10/1/2007 | 28327 | $ 4,381.67 | W.E. Levers |
| 10/12/2007 | 28343 | $ 7,896.54 | Icon International |
| 10/19/2007 | 28383 | $ 4,455.00 | W.E. Levers |
| 10/29/2007 | 28389 | $ 3,380.00 | W.E. Levers |

WESCOTT_01890

06-07 From AP

| | | | | |
|---|---|---|---|---|
| 11/2/2007 | 28446 | $ | 7,981.23 | Icon International |
| 11/2/2007 | 28453 | $ | 4,426.89 | W.E. Levers |
| 11/16/2007 | 28493 | $ | 8,623.75 | Icon International |
| 11/16/2007 | 28467 | $ | 2,380.00 | W.E. Levers |
| 11/16/2007 | 28505 | $ | 3,182.73 | W.E. Levers |
| 11/26/2007 | 28476 | $ | 3,310.91 | W.E. Levers |
| 11/27/2007 | 28539 | $ | 6,680.00 | Icon International |
| 12/5/2007 | 28555 | $ | 6,853.87 | W.E. Levers |
| 12/7/2007 | 28581 | $ | 8,432.86 | Icon International |
| 12/13/2007 | 28560 | $ | 3,898.23 | W.E. Levers |
| 12/17/2007 | 28605 | $ | 8,132.64 | Icon International |
| 12/17/2007 | 28606 | $ | 4,110.73 | W.E. Levers |
| 12/24/2007 | 28653 | $ | 7,634.91 | Icon International |

WESCOTT_01891



Filed and Attested by the
Office of Judicial Records
17 OCT 2017 01:50 pm
C. MORRIS

# EXHIBIT "B"



The Cincinnati Insurance Company • The Cincinnati Indemnity Company
The Cincinnati Casualty Company • The Cincinnati Specialty Underwriters Insurance Company
The Cincinnati Life Insurance Company

**Wayne McKinney**
*Senior Claims Specialist*

September 22, 2016                    **"CERTIFIED MAIL RECEIPT REQUESTED"**

Re:  Policyholder:       **Wescott Electric Company**
     Date of Loss:       08/02/2013
     Claim Number:       2583714
     Policy#:            EPP 0172182

Dear Mr. Wescott:

We have completed our review of the Westcott Electric Company (Wescott) Employee Theft
claim wherein Wescott advises that it discovered theft perpetrated by Mr. James S. Bryan on July
1, 2013. The claim amount asserted is $2,885,921.50. Our investigation concludes that Wescott
has provided adequate documentation to support the loss amount.

The above comments noted, a review of your policy shows that Wescott carries Commercial
Crime Coverage Form – CR-0020 (05/06). The policy provides a $100,000.00 limit for
Employee Theft for all claims "*discovered*" within the policy period that are attributable to one
"*occurrence.*". The coverage is not cumulative from year to year or policy period.

Based upon the aforementioned please find our check payable to Wescott for the available
coverage limit of $100,000.

In support of our position regarding the policy limit available to Wescott for this loss I direct
your attention to pertinent language found within the Employee Theft Coverage Form – CR -
0020 (05/06);

  1. Applicable coverage is provided per the terms and conditions of the primary form CR-
     0020 (05/06) as set forth below:

  A. Insuring Agreements

     Coverage is provided under the following Insuring Agreements for which a Limit of
     Insurance is shown in the Declarations and applies to loss that you sustain resulting
     directly from an "*occurrence*" taking place at any time which is "*discovered*" by you
     during the Policy Period shown in the Declarations or during the period of time provided
     in the Extended Period to Discover Loss Condition **E. 1.g.**

P.O. Box 251, Swarthmore PA 19081
wayne_mckinneycinfin.com • 484-478-0280 Fax 888-215-7320

Case ID: 170800994

**B. Limit of Insurance**

The most we will pay for all loss resulting directly from an "*occurrence*" is the applicable Limit of Insurance shown in the Declarations.

If any loss is covered under more than one insuring agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements of Coverages.

**F. Definitions**

4. "*Discover*" or "*Discovery*" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known."

14. "*Occurrence*" means:

   a. Under Insuring Agreement A. 1. :

      (1) An individual act:
      (2) The combined total of all separate acts whether or not related; or
      (3) A series of acts whether or not related;

      Committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, before such Policy Period or both.

Should you have any questions with regard to the content of this letter or the procedures to be followed in order to present your claim, please do not hesitate to contact us.

The Cincinnati Insurance Company completely and fully reserves all of its rights without waiver, estoppel or forfeiture in in regards to this communication and regarding any future activity or communication undertaken by our employees or others acting on our behalf.

Sincerely,

Wayne McKinney

Wayne McKinney
Senior Claims Specialist

CC: DMI
Enc: Proof of Loss

Case ID: 170800994



WESCOTT ELECTRIC CO AND JAMES WESCOTT AND WILLIAM
PO BOX 278
GLEN RIDDLE PA 19037

| | | | | Check No | 112568819 |
|---|---|---|---|---|---|
| Invoice No | Claim Number | Date of Loss | Claimant | | Amount |
| | 2583714 | 08/02/2013 | WESCOTT ELECTRIC | | 100,000.00 |
| COVERAGE: Crime - Fidelity | | FOR: | LIMIT EMPLOYEE THEFT CLAIM | | |
| BEN TYPE: Business Income | | PAYRSN: | Employee Dishonesty | | |
| | | | | Total | 100,000.00 |

The Cincinnati Insurance Company
The Cincinnati Indemnity Company
The Cincinnati Casualty Company
PO Box 145496, Cincinnati OH 45250-5496

DATE: 09/23/2016
Void if older than 365 days
CLAIM #: 2583714
73-27/421 Filth Third Bank (513) 870-0012

CHECK #: 112568819

AMOUNT: **One Hundred Thousand 00/100 Dollars**
PAY TO:
WESCOTT ELECTRIC CO AND JAMES WESCOTT AND WILLIAM WESCOTT

$**100,000.00**

FOR: LIMIT EMPLOYEE THEFT CLAIM

Wayne McKinney

⑈ 112568819 ⑈ ⑆042100272⑆ 7480494884⑈

Case ID: 170800994

W. McKinney
P.O. Box 251
Swarthmore, PA 19081

PHILADELPHIA PA 190
27 SEP 2016 PM 5 1

Wescott Electric Co
attn: James Wescott
P.O. Box 278
Glen Riddle, PA 19037

19037-027878

Case ID: 170800994



Filed and Attested by the
Office of Judicial Records
12 OCT 2017 01:53 pm
C. RIENZO

# EXHIBIT "C"

# THE CINCINNATI  CASUALTY  COMPANY

A Stock Insurance Company

## CRIME AND FIDELITY COVERAGE PART DECLARATIONS
## (COMMERCIAL ENTITIES)

Attached to and forming part of POLICY NUMBER:   **EPP 017 21 82**

Named Insured is the same as it appears in the Common Policy Declarations

Item   Location (address)

Employee Benefit Plan(s) included as insureds:
WESCOTT ELECTRIC STAFF 401K

Coverage is Written:

☒ Primary          ☐ Excess          ☐ Coindemnity          ☐ Concurrent

Coverage is provided only for the Crime Coverage for which a Limit of Insurance is shown below:

| Insuring Agreements Forming Part of This Coverage Part | Limit of Insurance Per Occurrence | Deductible Amount Per Occurrence |
|---|---|---|
| 1.  Employee Theft | $    100,000 | $      500 |
| 2.  Forgery or Alteration | $ | $ |
| 3.  Inside the Premises - Theft of Money and Securities | $ | $ |
| 4.  Inside the Premises - Robbery or Safe Burglary of Other Property | $ | $ |
| 5.  Outside the Premises | $ | $ |
| 6.  Computer Fraud | $ | $ |
| 7.  Funds Transfer Fraud | $ | $ |
| 8.  Money Orders and Counterfeit Money | $ | $ |
| If added by Endorsement, Insuring Agreement(s): | $ | $ |

Forms and endorsements applicable to this Coverage Part at policy inception.
CR0020    05/06   COMMERCIAL CRIME COVERAGE FORM (DISCOVERY FORM)
CA440     08/07   COMMERCIAL CRIME COVERAGE FORM AMENDATORY ENDORSEMENT

The Crime and Fidelity Coverage Part (Commercial Entities) consist of this Declaration Form and the Commercial Crime Coverage Form.

WESCOTT_02103

Case ID: 170800994

# COMMERCIAL CRIME COVERAGE FORM
## (DISCOVERY FORM)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section F. Definitions.

A.  Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place at any time which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss Condition E.1.g.:

1.  Employee Theft

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

2.  Forgery or Alteration

a.  We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

(1)  Made or drawn by or drawn upon you; or

(2)  Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

b.  If you are sued for refusing to pay any instrument covered in Paragraph 2.a., on the basis that it has been

forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

3.  Inside The Premises - Theft of Money and Securities

a.  We will pay for loss of "money" and "securities" inside the "premises" or "banking premises":

(1)  Resulting directly from "theft" committed by a person present inside such "premises" or "banking premises"; or

(2)  Resulting directly from disappearance or destruction.

b.  We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

c.  We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of or unlawful entry into those containers.

4.  Inside the Premises - Robbery or Safe Burglary of Other Property

a.  We will pay for loss of or damage to "other property":

(1)  Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

(2)  Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

b.  We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

CR 00 20 05 06                    © ISO Properties, Inc., 2005                    Page 1 of 13

WESCOTT_02104

Case ID: 170800994

c. We will pay for loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

5. **Outside the Premises**

   a. We will pay for loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

   b. We will pay for loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

6. **Computer Fraud**

   We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":

   a. To a person (other than a "messenger") outside those "premises"; or

   b. To a place outside those "premises".

7. **Funds Transfer Fraud**

   We will pay for loss of "funds" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

8. **Money Orders and Counterfeit Money**

   We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

   a. Money orders issued by any post office, express company or bank that are not paid upon presentation; or

   b. "Counterfeit money" that is acquired during the regular course of business.

B. **Limit of Insurance**

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit of Insurance shown in the Declarations.

If any loss is covered under more than one Insuring Agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any

one of those Insuring Agreements or Coverages.

C. **Deductible**

We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

D. **Exclusions**

1. This insurance does not cover:

   a. **Acts Committed by You, Your Partners or Your Members**

      Loss resulting from "theft" or any other dishonest act committed by:

      (1) You; or

      (2) Any of your partners or "members";

      whether acting alone or in collusion with other persons.

   b. **Acts of Employees Learned of by You Prior to the Policy Period**

      Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

   c. **Acts Of Employees, Managers, Directors, Trustees or Representatives**

      Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

      (1) Whether acting alone or in collusion with other persons; or

      (2) While performing services for you or otherwise;

      except when covered under Insuring Agreement A.1.

   d. **Confidential Information**

      Loss resulting from:

      (1) The unauthorized disclosure of your confidential information including, but not limited to, pat-

WESCOTT_02105

Case ID: 170800994

ents, trade secrets, processing methods or customer lists; or

(2) The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non-public information.

e. Governmental Action

Loss resulting from seizure or destruction of property by order of governmental authority.

f. Indirect Loss

Loss that is an indirect result of an "occurrence" covered by this insurance including, but not limited to, loss resulting from:

(1) Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".

(2) Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

(3) Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

g. Legal Fees, Costs and Expenses

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement A.2.

h. Nuclear Hazard

Loss or damage resulting from nuclear reaction or radiation or radioactive contamination, however caused.

i. Pollution

Loss or damage caused by or resulting from pollution. Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

j. War and Military Action

Loss or damage resulting from:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

2. Insuring Agreement A.1. does not cover:

a. Inventory Shortages

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

(1) An inventory computation; or

(2) A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

b. Trading

Loss resulting from trading, whether in your name or in a genuine or fictitious account.

c. Warehouse Receipts

Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

3. Insuring Agreements A.3., A.4. and A.5. do not cover:

a. Accounting or Arithmetical Errors or Omissions

Loss resulting from accounting or arithmetical errors or omissions.

b. Exchanges or Purchases

Loss resulting from the giving or surrendering of property in any exchange or purchase.

WESCOTT_02106

Case ID: 170800994

**c. Fire**

Loss or damage resulting from fire, however caused, except:

(1) Loss of or damage to "money" and "securities"; and

(2) Loss from damage to a safe or vault.

**d. Money Operated Devices**

Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**e. Motor Vehicles or Equipment and Accessories**

Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

**f. Transfer or Surrender of Property**

(1) Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

(a) On the basis of unauthorized instructions;

(b) As a result of a threat to do bodily harm to any person;

(c) As a result of a threat to do damage to any property;

(d) As a result of a threat to introduce a denial of service attack into your computer system;

(e) As a result of a threat to introduce a virus or other malicious instruction into your computer system which is designed to damage, destroy or corrupt data or computer programs stored within your computer system;

(f) As a result of a threat to contaminate, pollute or render substandard your products or goods; or

(g) As a result of a threat to disseminate, divulge or utilize:

(i) Your confidential information; or

(ii) Weaknesses in the source code within your computer system.

(2) But, this Exclusion does not apply under Insuring Agreement A.5. to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

(a) Had no knowledge of any threat at the time the conveyance began; or

(b) Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**g. Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

**h. Voluntary Parting of Title to or Possession of Property**

Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**4.** Insuring Agreement A.6. does not cover:

**a. Credit Card Transactions**

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

**b. Funds Transfer Fraud**

Loss resulting from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

**c. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

(1) An inventory computation; or

(2) A profit and loss computation.

Case ID: 170800994

5.   Insuring Agreement A.7. does not cover:

**COMPUTER FRAUD**

Loss resulting from the use of a computer to fraudulently cause a transfer of "money", "securities" or "other property".

**E.  Conditions**

The following Conditions apply in addition to the Common Policy Conditions:

1.   **Conditions Applicable to all Insuring Agreements**

a.   **Additional Premises or Employees**

If, while this insurance is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this insurance. Notice to us of an increase in the number of "premises" or "employees" need not be given and no additional premium need be paid for the remainder of the Policy Period shown in the Declarations.

b.   **Concealment, Misrepresentation or Fraud**

This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

(1)   This insurance;

(2)   The property covered under this insurance;

(3)   Your interest in the property covered under this insurance; or

(4)   A claim under this insurance.

c.   **Consolidation - Merger or Acquisition**

If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

(1)   You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this insurance to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

(2)   For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this insurance shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

d.   **Cooperation**

You must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

e.   **Duties in the Event of Loss**

After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

(1)   Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement A.1. or A.2.) involves a violation of law, you must also notify the local law enforcement authorities.

(2)   Submit to examination under oath at our request and give us a signed statement of your answers.

(3)   Produce for our examination all pertinent records.

(4)   Give us a detailed, sworn proof of loss within 120 days.

(5)   Cooperate with us in the investigation and settlement of any claim.

f.   **Employee Benefit Plans**

(1)   The "employee benefit plans" shown in the Declarations (hereafter referred to as Plan) are included as insureds under Insuring Agreement A.1.

(2)   If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance for Insuring Agree-

CR 00 20 05 06                © ISO Properties, Inc., 2005                **Page 5 of 13**

WESCOTT_02108

Case ID: 170800994

ment A.1. that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

(3) With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement A.1. is replaced by the following:

We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

(4) If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

(5) If two or more Plans are insured under this insurance, any payment we make for loss:

(a) Sustained by two or more Plans; or

(b) Of commingled "funds" or "other property" of two or more Plans;

resulting directly from an "occurrence" will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limit of Insurance of all Plans sustaining loss.

(6) The Deductible Amount applicable to Insuring Agreement A.1. does not apply to loss sustained by any Plan.

g. **Extended Period to Discover Loss**

We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:

(1) No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insur-

ance provides coverage for loss sustained prior to its effective date.

(2) No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

h. **Joint Insured**

(1) If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

(2) If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

(3) An "employee" of any Insured is considered to be an "employee" of every Insured.

(4) If this insurance or any of its coverages is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

(a) No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

(b) No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

(5) We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

WESCOTT_02109

Case ID: 170800994

(6) Payment by us to the first Named Insured for loss sustained by any insured, other than an "employee benefit plan", shall fully release us on account of such loss.

**i. Legal Action Against Us**

You may not bring any legal action against us involving loss;

(1) Unless you have complied with all the terms of this Insurance;

(2) Until 90 days after you have filed proof of loss with us; and

(3) Unless brought within 2 years from the date you "discovered" the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**j. Liberalization**

If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this insurance.

**k. Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this Insurance, our obligations are limited as follows:

(1) Primary Insurance

When this insurance is written as primary insurance, and:

(a) You have other insurance subject to the same terms and conditions as this insurance, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

(b) You have other insurance covering the same loss other than that described in Paragraph (1)(a), we will only pay for the amount of loss that exceeds:

(i) The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

(ii) The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this Insurance.

(2) Excess Insurance

(a) When this insurance is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this Insurance.

(b) However, if loss covered under this Insurance is subject to a Deductible, we will reduce the Deductible Amount shown in the Declarations, by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

**l. Ownership of Property; Interests Covered**

The property covered under this insurance is limited to property;

(1) That you own or lease; or

(2) That you hold for others whether or not you are legally liable for the loss of such property.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

**m. Policy Bridge - Discovery Replacing Loss Sustained**

(1) If this insurance replaces insurance that provided you with an extended period of time after cancellation in which to discover loss and which did not terminate

WESCOTT_02110

at the time this insurance became effective:

    (a) We will not pay for any loss that occurred during the Policy Period of that prior insurance which is "discovered" by you during the extended period to "discover" loss, unless the amount of loss exceeds the Limit of Insurance and Deductible Amount of that prior insurance. In that case, we will pay for the excess loss subject to the terms and conditions of this policy.

    (b) However, any payment we make for the excess loss will not be greater than the difference between the Limit of Insurance and Deductible Amount of that prior insurance and the Limit of Insurance shown in the Declarations. We will not apply the Deductible Amount shown in the Declarations to this excess loss.

    (2) The Other Insurance Condition E.1.k. does not apply to this Condition.

**n.  Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

**o.  Recoveries**

    (1) Any recoveries, whether effected before or after any payment under this insurance, whether made by us or you, shall be applied net of the expense of such recovery:

    (a) First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

    (b) Second, to us in satisfaction of amounts paid in settlement of your claim;

    (c) Third, to you in satisfaction of any Deductible Amount; and

    (d) Fourth, to you in satisfaction of any loss not covered under this insurance.

    (2) Recoveries do not include any recovery:

    (a) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

    (b) Of original "securities" after duplicates of them have been issued.

**p.  Territory**

This insurance covers loss that you sustain resulting directly from an "occurrence" taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**q.  Transfer of Your Rights of Recovery Against Others to Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**r.  Valuation - Settlement**

    (1) The value of any loss for purposes of coverage under this policy shall be determined as follows:

    (a) Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

    (i) At face value in the "money" issued by that country; or

    (ii) In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

    (b) Loss of "securities" but only up to and including their value at the close of business on the day the loss was "discovered". We may, at our option:

WESCOTT_02111

Case ID: 170800994

(i) Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

(ii) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

    i. Market value of the "securities" at the close of business on the day the loss was "discovered"; or

    ii. The Limit of Insurance applicable to the "securities".

(c) Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

(i) The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose;

(ii) The amount you actually spend that is necessary to repair or replace the lost or damaged property; or

(iii) The Limit of Insurance applicable to the lost or damaged property.

With regard to Paragraphs r.(1)(c)(i) through r.(1)(c)(iii), we will not pay on a replacement cost basis for any loss or damage:

    i. Until the lost or damaged property is actually repaired or replaced; and

    ii. Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

(2) We will, at your option, settle loss or damage to property other than "money":

    (a) In the "money" of the country in which the loss or damage occurred; or

    (b) In the United States of America dollar equivalent of the "money" of the country in which the loss or damage occurred determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

(3) Any property that we pay for or replace becomes our property.

2. **Conditions Applicable to Insuring Agreement A.1.**

   a. Termination as to Any Employee

    This Insuring Agreement terminates as to any "employee":

    (1) As soon as:

      (a) You; or

      (b) Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

    learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

    (2) On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

    We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If

CR 00 20 05 06           © ISO Properties, Inc., 2005          **Page 9 of 13**

WESCOTT_02112

notice is mailed, proof of mailing will be sufficient proof of notice.

**b.   Territory**

We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory Condition E.1.p. for a period of not more than 90 consecutive days.

**3.   Conditions Applicable to Insuring Agreement A.2.**

**a.   Deductible Amount**

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement A.2.

**b.   Electronic and Mechanical Signatures**

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

**c.   Proof of Loss**

You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

**d.   Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition E.1.p. does not apply to Insuring Agreement A.2.

**4.   Conditions Applicable to Insuring Agreements A.4. and A.5.**

**a.   Armored Motor Vehicle Companies**

Under Insuring Agreement A.5., we will only pay for the amount of loss you cannot recover:

(1) Under your contract with the armored motor vehicle company; and

(2) From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**b.   Special Limit of Insurance for Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

(1) Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

(2) Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**5.   Conditions Applicable to Insuring Agreement A.6.**

**a.   Special Limit of Insurance for Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**b.   Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition E.1.p. does not apply to Insuring Agreement A.6.

**F.   Definitions**

1.   "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

2.   "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

3.   "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

4.   "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

"Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party

© ISO Properties, Inc., 2005

WESCOTT_02113

under circumstances which, if true, would constitute a loss under this insurance.

5. "Employee":

a. "Employee" means:

  (1) Any natural person:

    (a) While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any other dishonest act committed by the "employee";

    (b) Who you compensate directly by salary, wages or commissions; and

    (c) Who you have the right to direct and control while performing services for you;

  (2) Any natural person who is furnished temporarily to you:

    (a) To substitute for a permanent "employee" as defined in Paragraph a.(1), who is on leave; or

    (b) To meet seasonal or short-term work load conditions;

while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises";

  (3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph a.(2);

  (4) Any natural person who is:

    (a) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; and

    (b) A director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan";

  (5) Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained as a consultant while performing services for you;

  (6) Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the "premises";

  (7) Any "employee" of an entity merged or consolidated with you prior to the effective date of this insurance; or

  (8) Any of your "managers", directors or trustees while:

    (a) Performing acts within the scope of the usual duties of an "employee"; or

    (b) Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

b. "Employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph 5.a.

6. "Employee benefit plan" means any welfare or pension benefit plan shown in the Declarations that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

7. "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

8. "Fraudulent instruction" means:

a. An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

b. A written instruction (other than those described in Insuring Agree-

WESCOTT_02114

Case ID: 170800994

ment A.2.) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

c. An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an "employee" but which was in fact fraudulently transmitted by someone else without your or the "employee's" knowledge or consent.

9. "Funds" means "money" and "securities".

10. "Manager" means a person serving in a directorial capacity for a limited liability company.

11. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

12. "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

13. "Money" means:

   a. Currency, coins and bank notes in current use and having a face value; and

   b. Travelers checks, register checks and money orders held for sale to the public.

14. "Occurrence" means:

   a. Under Insuring Agreement A.1.:

      (1) An individual act;

      (2) The combined total of all separate acts whether or not related; or

      (3) A series of acts whether or not related;

      committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, before such Policy Period or both.

   b. Under Insuring Agreement A.2.:

      (1) An individual act;

      (2) The combined total of all separate acts whether or not related; or

      (3) A series of acts whether or not related;

      committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, before such Policy Period or both.

   c. Under All Other Insuring Agreements:

      (1) An individual act or event;

      (2) The combined total of all separate acts or events whether or not related; or

      (3) A series of acts or events whether or not related;

      committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, before such Policy Period or both.

15. "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, electronic data or any property specifically excluded under this insurance.

16. "Premises" means the interior of that portion of any building you occupy in conducting your business.

17. "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

   a. Caused or threatened to cause that person bodily harm; or

   b. Committed an obviously unlawful act witnessed by that person.

18. "Safe burglary" means the unlawful taking of:

   a. Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

   b. A safe or vault from inside the "premises".

19. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or property and includes:

   a. Tokens, tickets, revenue and other stamps (whether represented by

WESCOTT_02115

Case ID: 170800994

actual stamps or unused value in a meter) in current use; and

b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

20. "Theft" means the unlawful taking of property to the deprivation of the insured.

21. "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "funds":

a. By means of electronic, telegraphic, cable, teletype, telefacsimile or tele-phone instructions communicated directly through an electronic funds transfer system; or

b. By means of written instructions (other than those described in Insuring Agreement A.2.) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

22. "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

WESCOTT_02116

Case ID: 170800994

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMMERCIAL CRIME COVERAGE FORM
# AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM

A. It is agreed that E. Conditions, 1. Conditions Applicable to all Insuring Agreements, J. Liberalization is deleted in its entirety and replaced by the following:

    **j.** Liberalization

        If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

        **a.** The date we implemented the change in your state; or

        **b.** The date this Coverage Part became effective; and

        will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

B. It is agreed that D. Exclusions, 1. I. Pollution is deleted in its entirety and replaced by the following:

    **i.** Pollutants

        Loss or damage caused by or resulting from pollutants. Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

        **a.** You are regularly or otherwise engaged in activities which taint or degrade the environment; or

        **b.** You use, generate or produce the pollutant.

CA 440 08 07

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

WEBSCOTT_02117

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL CRIME COVERAGE FORM
## AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM

A.  It is agreed that **E. Conditions, 1. Conditions Applicable to all Insuring Agreements, J. Liberalization** is deleted in its entirety and replaced by the following:

**J.  Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.**  The date we implemented the change in your state; or

**b.**  The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

B.  It is agreed that **D. Exclusions, 1. i. Pollution** is deleted in its entirety and replaced by the following:

**i.  Pollutants**

Loss or damage caused by or resulting from pollutants. Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.**  You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.**  You use, generate or produce the pollutant.

**CA 440 08 07**                    Includes copyrighted material of Insurance
                    Services Office, Inc., with its permission.



# EXHIBIT "D"

Case ID: 170800994

# THE CINCINNATI INSURANCE COMPANY

**Mailing Address:   P.O. BOX 145496, CINCINNATI, OHIO 45250-5496**
**Home Office:        FAIRFIELD, OHIO 45014-5141**
**(513) 870-2000**

CPP 091 44 23/CPA 091 44 23

**A Stock Insurance Company**                           Previous Policy No.

## COMMON POLICY DECLARATIONS

RENEWAL

| DECLARATIONS | POLICY NUMBER   CPP 082 48 61/CPA 082 48 61 |
|---|---|

NAMED INSURED  WESTCOTT ELECTRIC COMPANY AND JAMES WESTCOTT
P O BOX 278
ADDRESS         GLEN RIDDLE PA 19037
(Number & Street,
Town, County,
State & Zip No.)

**Policy Period:**   At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
    Policy number:  **CPP 082 48 61**          FROM: **12-31-2007**   TO: **12-31-2010**

**Automobile and / or Garage**
    Policy number:  **CPA 082 48 61**          FROM: **12-31-2007**   TO: **12-31-2008**

Agency   **BIDDLE & CO INS BROKERS 37-113**
City     **NEWTON SQUARE PA**

**Legal Entity / Business Description**
**CORPORATION**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:  (show numbers)
**REFER TO IA901**

**RC2 RNE**
**01-07-2008**

Countersigned ————————————————— By —————————————————————
                              (Date)                        (Authorized Representative)

IN WITNESS WHEREOF, this policy has been signed by our President and Secretary in the City of Fairfield,
Ohio, but this policy shall not be binding upon us unless countersigned by an authorized representative of
ours.  This provision does not apply in Arizona, Virginia and Wisconsin.

                    Secretary                              President

**COMPANY COPY**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections and Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer of Your Rights and Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

        Copyright, Insurance Services Office, Inc., 1998

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SUPPLEMENTAL ENDORSEMENT

FORMS AND/OR ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| IA901 | 01/92 | IA102 | 02/03 | IA904 | 04/04 | IL0022 | 05/87 |
| IA4111PA | 07/07 | IA4189PA | 04/99 | IL0166 | 01/99 | IL0172 | 11/93 |
| IL0910 | 07/02 | IA4226 | 03/02 | IA4236 | 01/06 | IA4238 | 01/06 |
| IA4239 | 01/06 | IA4295PA | 08/06 | IP446 | 08/01 | IA4006 | 04/04 |
| FM501 | 08/06 | GA501 | 10/01 | CA501 | 01/92 | MA508 | 03/05 |
| MA524 | 09/05 | MA509 | 08/06 | AA501PA | 11/03 | USC504 | 12/04 |

IA901 01 92

Case ID: 170800994

Attached to POLICY
NUMBER **CPP 082 48 61/CPA 082 48 61**

# SUMMARY OF PREMIUMS CHARGED

### THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | | |
|---|---|---|
| Commercial Property Coverage Part   **W/EBC** | $ | **2,502** |
| Commercial General Liability Coverage Part | $ | **14,475** |
| Commercial Crime Coverage Part | $ | **489** |
| Commercial Umbrella / Excess Liability Coverage | $ | **10,928** |
| **CONTRACTORS' EQUIPMENT (AND TOOLS)** | $ | **2,190** |
| **ELECTRONIC DATA PROCESSING** | $ | **472** |
| **INSTALLATION FLOATER** | $ | **2,625** |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| Installment Charge | $ | **20** |
| Sub-Total | $ | **33,701** |
| | | |
| Commercial Auto Coverage Part | $ | **9,226** |
| Auto Installment Charge | $ | **INCL** |
| | | |
| Terrorism Coverage | $ | **272** |
| Annual Total | $ | **43,199** |

### PAYMENTS

| | All Other | + | Auto | | = | Total Installment | |
|---|---|---|---|---|---|---|---|
| | **First Installment** | **Remaining Installment** | **First Installment** | **Remaining Installment** | | **First Installment** | **Remaining Installment** |
| ☐ SEMI-ANNUAL | $ | $ | + $ | $ | = $ | | $ |
| ☒ QUARTERLY | **$8,488** | **$8,488** | + **$2,311** | **$2,311** | = **$10,799** | | **$10,799** |

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary.  Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**   Case ID: 170800994

IA 102 02 03

# THE CINCINNATI INSURANCE COMPANY

A Stock Insurance Company

## CRIME AND FIDELITY COVERAGE PART DECLARATIONS (COMMERCIAL ENTITIES)

Attached to and forming part of POLICY NUMBER: **CPP 106 87 52**    Effective Date: **01-31-2010**

Named Insured: **IS THE SAME AS IT APPEARS ON THE COMMON POLICY DECLARATIONS**

Item   Location (address)
1    **193 LENNI ROAD**
     **ASTON PA 19014**

Employee Benefit Plan(s) Included as Insureds:

**Coverage is Written:**
☒ Primary    ☐ Excess    ☐ Coindemnity    ☐ Concurrent

Coverage is provided only for the Crime Coverage for which a Limit of Insurance is shown below:

| Insuring Agreements Forming Part of This Coverage Part | Limit of Insurance Per Occurrence | Deductible Amount Per Occurrence |
|---|---|---|
| 1.   **Employee Theft** | $100,000 | $500 |
| 2.   **Forgery or Alteration** | $ | $ |
| 3.   **Inside the Premises - Theft of Money and Securities** | $ | $ |
| 4.   **Inside the Premises - Robbery or Safe Burglary of Other Property** | $ | $ |
| 5.   **Outside the Premises** | $ | $ |
| 6.   **Computer Fraud** | $ | $ |
| 7.   **Funds Transfer Fraud** | $ | $ |
| 8.   **Money Orders and Counterfeit Money** | $ | $ |
| If added by Endorsement, Insuring Agreement(s): | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |

Forms and endorsements applicable to this Coverage Part at policy inception:
**CR0020    05/06    CA440    08/07    CA456    10/08**

The Crime and Fidelity Coverage Part (Commercial Entities) consist of this Declaration Form and the Commercial Crime Coverage Form.

**CA 509 08 07**

Case ID: 170800994

# THE CINCINNATI INSURANCE COMPANY

**Mailing Address:** P.O. BOX 145496, CINCINNATI, OHIO 45250-5496
**Home Office:** FAIRFIELD, OHIO 45014-5141
513-870-2000

CPP 082 48 61/CPA 082 48 61

A Stock Insurance Company          Previous Policy No.

## COMMON POLICY DECLARATIONS

RENEWAL

| DECLARATIONS | POLICY NUMBER | CPP 106 87 52/CPA 106 87 52 |
|---|---|---|

NAMED INSURED WESCOTT ELECTRIC CO AND JAMES WESCOTT
P O BOX 278
GLEN RIDDLE PA 19037

**ADDRESS**
(Number & Street,
Town, County,
State & Zip No.)

**Policy Period:** At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
Policy number: **CPP 106 87 52**          FROM: **01-31-2010**     TO: **01-31-2013**

**Automobile and / or Garage**
Policy number: **CPA 106 87 52**          FROM: **01-31-2010**     TO: **01-31-2011**

Agency    **BIDDLE & CO INS BROKERS 37-113**
City      **NEWTON SQUARE PA**

**Legal Entity / Business Description**
**CORPORATION**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS: (show numbers)

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| IA4330 | 03/08 | IA102 | 09/08 | IA904 | 04/04 | IL0022 | 05/87 |
| IA4111PA | 11/09 | IA4189PA | 04/99 | IA4313PA | 07/09 | IA4314PA | 07/09 |
| IL0910 | 07/02 | IA4123 | 11/95 | IA4236 | 01/08 | IA4238 | 01/08 |
| IA4295PA | 08/06 | IA4338 | 01/09 | IP446 | 08/01 | IA4006 | 09/07 |
| FH501 | 08/06 | GA501 | 10/01 | CA509 | 08/07 | MA508 | 03/05 |
| MA524 | 09/05 | MA509 | 08/06 | AA501PA | 03/08 | USC504 | 12/04 |

TE3 RNE
02-05-2010

Countersigned _____  By _____
                        (Date)                              (Authorized Representative)

COMPANY COPY

Case ID: 170800994
Page 1 of 2

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. The refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections and Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# FORMS AND ENDORSEMENTS SCHEDULE
# AT INCEPTION OF POLICY

POLICY NUMBER   **CPP 106 87 52**       EFFECTIVE DATE  **01-31-2010**

NAMED INSURED   **WESCOTT ELECTRIC CO AND JAMES WESCOTT**

**FORMS AND ENDORSEMENTS APPLICABLE AT INCEPTION OF POLICY**

| | | |
|---|---|---|
| IA501PA | 05/09 | COMMON POLICY DECLARATIONS |
| IA4330 | 03/08 | FORMS AND ENDORSEMENTS SCHEDULE AT INCEPTION OF POLICY |
| IA102 | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IL0022 | 05/87 | EFFECTIVE TIME CHANGES--REPLACEMENT OF 12 NOON |
| IA4111PA | 11/09 | PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4189PA | 04/99 | IMPORTANT NOTICE |
| IA4313PA | 07/09 | PENNSYLVANIA CHANGES - ACTUAL CASH VALUE |
| IA4314PA | 07/09 | PENNSYLVANIA CHANGES |
| IL0910 | 07/02 | PENNSYLVANIA NOTICE |
| IA4123 | 11/95 | NOTICE TO POLICYHOLDERS EXCLUSION - LEAD LIABILITY |
| IA4236 | 01/08 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IA4238 | 01/08 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4295PA | 08/06 | PENNSYLVANIA WARNING NOTICE |
| IA4338 | 01/09 | SIGNATURE ENDORSEMENT |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 09/07 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENODRSEMENT |
| | | |
| FM501 | 08/06 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| FA450 | 11/04 | COMMERCIAL PROPERTY CONDITIONS |
| FM101 | 04/04 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL |
| FA4042 | 11/07 | PROPERTY COVERAGE PART AMENDATORY ENDORSEMENT |
| FA4013PA | 11/02 | PENNSYLVANIA CHANGES - ACTUAL CASH VALUE |
| FA4028PA | 11/05 | PENNSYLVANIA CHANGES |
| FA244 | 04/04 | EQUIPMENT BREAKDOWN COVERAGE (EXCLUDING PRODUCTION EQUIPMENT) |
| FA213 | 04/04 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |
| FA250 | 04/06 | CINCIPLUS COMMERCIAL PROPERTY EXPANDED COVERAGE PLUS ENDORSEMENT |
| FA4053 | 04/06 | CINCIPLUS COMMERCIAL PROPERTY EXPANDED COVERAGE PLUS ENDORSEMENT |
| | | |
| GA501 | 10/01 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| GA101 | 12/04 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| GA325PA | 10/95 | PENNSYLVANIA AMENDATORY ENDORSEMENT |
| GA233 | 02/07 | CONTRACTORS COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT |
| GA323 | 10/01 | EXCLUSION - LEAD LIABILITY |
| GA340 | 10/01 | EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY |
| GA369 | 11/02 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") |
| GA382 | 03/02 | FUNGI OR BACTERIA EXCLUSION |

This is a schedule of the forms and endorsements found in this policy on its inception date. The schedule is not updated during the policy term to reflect additions to or deletions from this schedule. No coverage is provided by this schedule. It does not replace any provision of your policy. You should read your policy and review your declarations page(s) and any subsequent endorsements carefully for complete information on the coverage that you are provided. If there is any conflict between the policy and this schedule, the provisions of the policy shall prevail.

IA 4330 03 08

Case ID: 170800994

# FORMS AND ENDORSEMENTS SCHEDULE
# AT INCEPTION OF POLICY

**POLICY NUMBER**   CPP 106 87 52                          **EFFECTIVE DATE**   01-31-2010

**NAMED INSURED**   WESCOTT ELECTRIC CO AND JAMES WESCOTT

FORMS AND ENDORSEMENTS APPLICABLE AT INCEPTION OF POLICY

| | | |
|---|---|---|
| CA509 | 08/07 | CRIME AND FIDELITY COVERAGE PART DECLARATIONS |
| CR0020 | 05/06 | COMMERCIAL CRIME COVERAGE FORM |
| CA440 | 08/07 | COMMERCIAL CRIME COVERAGE FORM AMENDATORY ENDORSEMENT |
| CA456 | 10/08 | 2008 NOTICE TO POLICYHOLDERS CRIME AND FIDELITY COVERAGE |
| | | |
| MA508 | 03/05 | CONTRACTORS   EQUIPMENT (AND TOOLS) COVERAGE PART DECLARATIONS |
| MA108 | 03/05 | CONTRACTORS   EQUIPMENT (AND TOOLS) COVERAGE FORM |
| MA135 | 11/99 | COMMERCIAL INLAND MARINE CONDITIONS |
| | | |
| MA524 | 09/05 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS |
| MA123 | 08/07 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM |
| MA135 | 11/99 | COMMERCIAL INLAND MARINE CONDITIONS |
| | | |
| MA509 | 08/06 | INSTALLATION FLOATER COVERAGE PART DECLARATIONS |
| MA135 | 11/99 | COMMERCIAL INLAND MARINE CONDITIONS |
| MA109 | 10/07 | INSTALLATION FLOATER SPECIAL COVERAGE FORM |
| | | |
| AA501PA | 03/08 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| AA218 | 03/06 | AUTOMOBILE SCHEDULE - BUSINESS AUTO |
| AA101 | 03/06 | BUSINESS AUTO COVERAGE FORM |
| AA4081PA | 07/06 | REJECTION OF UNINSURED MOTORIST PROTECTION |
| AA4083PA | 03/01 | REJECTION OF UNDERINSURED MOTORISTS PROTECTION |
| AA4013PA | 07/09 | PENNSYLVANIA UNDERINSURED MOTORISTS COVERAGE - NONSTACKED |
| AA4014PA | 07/09 | PENNSYLVANIA UNINSURED MOTORISTS COVERAGE - NONSTACKED |
| AA4128PA | 11/04 | IMPORTANT NOTICE AND FIRST PARTY BENEFITS EXTRAORDINARY MEDICAL |
| CA0180 | 01/97 | PENNSYLVANIA CHANGES |
| CPA1092PA | 10/91 | UNINSURED MOTORISTS COVERAGE OPTION NOTIFICATION |
| CA2237 | 12/92 | PENNSYLVANIA BASIC FIRST PARTY BENEFIT |
| CA2238 | 07/90 | PENNSYLVANIA ADDED AND COMBINATION FIRST PARTY BENEFITS |
| CA2256 | 07/90 | PENNSYLVANIA EXTRAORDINARY MEDICAL BENEFITS COVERAGE |
| AA265 | 03/06 | CINCIPLUS BUSINESS AUTO EXPANDED COVERAGE |
| AA206 | 12/90 | SUPPLEMENTARY SCHEDULE FOR BUSINESS AUTO |
| CA9923 | 12/93 | RENTAL REIMBURSEMENT COVERAGE |
| | | |
| USC504 | 12/04 | COMMERCIAL UMBRELLA LIABILITY COVERAGE PART DECLARATIONS |
| US511 | 09/02 | ADDITIONAL SCHEDULE OF UNDERLYING INSURANCE |
| US101UM | 12/04 | COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM |
| US450PA | 01/96 | PENNSYLVANIA NOTICE |

This is a schedule of the forms and endorsements found in this policy on its inception date. The schedule is not updated during the policy term to reflect additions to or deletions from this schedule. No coverage is provided by this schedule. It does not replace any provision of your policy. You should read your policy and review your declarations page(s) and any subsequent endorsements carefully for complete information on the coverage that you are provided. If there is any conflict between the policy and this schedule, the provisions of the policy shall prevail.

Case ID: 170800994

IA 4330 03 08

# FORMS AND ENDORSEMENTS SCHEDULE
# AT INCEPTION OF POLICY

**POLICY NUMBER**   CPP 106 87 52                          EFFECTIVE DATE   **01-31-2010**

**NAMED INSURED**   WESCOTT ELECTRIC CO AND JAMES WESCOTT

FORMS AND ENDORSEMENTS APPLICABLE AT INCEPTION OF POLICY

| | | |
|---|---|---|
| US4062 | 11/05 | MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS - |
| US3010 | 12/04 | CONTRACTORS LIMITATIONS - INCLUDING EXCESS WRAP-UP COVERAGE |
| US302 | 12/04 | POLLUTANT EXCLUSION - OTHER THAN AUTO |
| US3043 | 12/04 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") |
| US3048 | 12/04 | FUNGI OR BACTERIA EXCLUSION |
| US352 | 12/04 | PERSONAL PROPERTY CARE, CUSTODY OR CONTROL EXCLUSION |
| US395 | 12/04 | LEAD LIABILITY EXCLUSION |
| US407 | 12/04 | EMPLOYEE BENEFIT LIABILITY |

This is a schedule of the forms and endorsements found in this policy on its inception date. The schedule is not updated during the policy term to reflect additions to or deletions from this schedule. No coverage is provided by this schedule. It does not replace any provision of your policy. You should read your policy and review your declarations page(s) and any subsequent endorsements carefully for complete information on the coverage that you are provided. If there is any conflict between the policy and this schedule, the provisions of the policy shall prevail.

**IA 4330 03 08**

Case ID: 170800994

Attached to POLICY
NUMBER **CPP 106 87 52/CPA 106 87 52**

# SUMMARY OF PREMIUMS CHARGED

### THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | | |
|---|---|---|
| Commercial Property Coverage Part   **W/EBC** | $ | **4,080** |
| Commercial General Liability Coverage Part | $ | **20,125** |
| Commercial Umbrella / Excess Liability Coverage Part | $ | **10,375** |
| **CRIME AND FIDELITY COVERAGE PART** | $ | **345** |
| **CONTRACTORS' EQUIPMENT (AND TOOLS)** | $ | **2,163** |
| **ELECTRONIC DATA PROCESSING EQUIPMENT** | $ | **472** |
| **INSTALLATION FLOATER** | $ | **3,375** |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| Installment Charge | $ | **20** |
| | Sub-Total  $ | **40,955** |
| | | |
| Commercial Auto Coverage Part | $ | **8,425** |
| Auto Installment Charge | $ | **INCL** |
| | | |
| Terrorism Coverage | $ | **325** |
| | Annual Total  $ | **49,705** |

**PAYMENTS**

| | All Other | + | Auto | = | Total Installment | |
|---|---|---|---|---|---|---|
| | **First Installment** | **Remaining Installment** | **First Installment** | **Remaining Installment** | **First Installment** | **Remaining Installment** |
| QUARTERLY | $ 10,315 | $ 10,315 | + $ 2,111 | $ 2,111 | = $ 12,426 | $ 12,426 |

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**   Case ID: 170800994

IA 102 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

### A. Special Per Occurrence Deductible

1. If an "occurrence" happens to Covered Property under the Commercial Property Coverage Part and to Covered Property under at least one of the following:

   a. The Commercial Inland Marine Coverage Part, and

   b. The Commercial Crime Coverage Part;

   the most we will deduct from any loss or damage in any one "occurrence" is the deductible indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

2. This endorsement does not apply to any of the forms listed in Paragraphs a. and b.:

   a. \* Electronic Data Processing Coverage Form, D. Deductible, 2. Specified Losses Deductible

   Jewelers Block Coverage Form

   \* Water Backup from Sewers, Drains, Septic Systems or Sump Pumps Endorsement

   **Windstorm or Hail Percentage Deductible Form**

   **Earthquake and Volcanic Eruption Endorsement**

   **Earthquake and Volcanic Eruption Endorsement (Sub-Limit Form)**

   **Flood Coverage Endorsement**

   **Equipment Breakdown Coverage (Including Production Equipment)**

   **Equipment Breakdown Coverage (Excluding Production Equipment)**

   **\* Temperature Change Coverage Form**

   **Commercial Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft, 2. Forgery or Alteration, 6. Computer Fraud and 7. Funds Transfer Fraud**

   **Crime Expanded Coverage (XC$^)$) Coverage Form, A. Insuring Agreements, 1. Employee Theft and 2. Forgery or Alteration**

   **Government Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft - Per Loss Coverage, 2. Employee Theft - Per Employee Coverage, 3. Forgery or Alteration, 7. Computer Fraud and 8. Funds Transfer Fraud**

   **\* Or such coverage as provided in the CinciPlus Commercial Property Expanded Coverage or Expanded Coverage Plus Forms**

   b. ☐ Other

B.  Definition

For the purpose of this endorsement only, any definition of "occurrence" is deleted in its entirety and the following definition is added to:

1.  **COMMERCIAL PROPERTY CONDITIONS,**
2.  **COMMERCIAL INLAND MARINE CONDITIONS,**
3.  **COMMERCIAL CRIME COVERAGE FORM,**
4.  **CRIME EXPANDED COVERAGE (XC) COVERAGE FORM, and**
5.  **GOVERNMENT CRIME COVERAGE FORM:**

**"Occurrence"** means all loss, damage, or a sequence of loss or damage, casualties or disasters arising from a single happening or event.

Case ID: 170800994

# THE CINCINNATI INSURANCE COMPANY

**A STOCK INSURANCE COMPANY**

## COMMERCIAL GENERAL LIABILITY COVERAGE
## PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: **CPP 082 48 61**      Effective Date: **12-31-2007**

Named Insured: **IS THE SAME AS IT APPEARS ON THE COMMON POLICY DECLARATIONS**

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $ **1,000,000** | |
| GENERAL AGGREGATE LIMIT | $ **2,000,000** | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ **2,000,000** | |
| PERSONAL & ADVERTISING INJURY LIMIT | $ **1,000,000** | ANY ONE PERSON OR ORGANIZATION |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT<br>$100,000 limit unless otherwise indicated herein: | $ **REFER TO GA210** | ANY ONE PREMISES |
| MEDICAL EXPENSE LIMIT<br>$5,000 limit unless otherwise indicated herein: | $ **REFER TO GA210** ANYONEPERSON | |

| CLASSIFICATION | CODE NO. | PREMIUM BASE<br>A - Area<br>B - Payroll<br>C - Gross Sales<br>D - Units<br>E - Other | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|
| | | | Products / Completed Operations | All Other | Products / Completed Operations | All Other |
| BROADENED COVERAGE | 20291 | | | 2.5% | | 334 |
| AUTOMATIC ADDITIONAL INSUREDS | 29939 | | | | | 801 |
| ELEC. WORK-WITHIN BLDG. | 92478 | B 1,800,000 | 1.251 | 6.160 | 2,252 | 11,088 |

The General Liability Coverage Part is subject to an annual minimum premium.

|  | TOTAL ANNUAL PREMIUM | $ **14,475** |
|---|---|---|

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GA101 | 12/04 | GA325PA | 10/95 | GA210 | 02/07 | GA340 | 10/01 |
| GA4240 | 01/06 | GA472 | 10/01 | GA369 | 11/02 | GA382 | 03/02 |

GA 501 10 01

Case ID: 170800994

# THE CINCINNATI INSURANCE COMPANY
### CINCINNATI, OHIO

A Stock Insurance Company

# CRIME COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: **CPP 082 48 61**    Effective Date: **12-31-2007**

Named Insured    **WESTCOTT ELECTRIC COMPANY AND JAMES WESTCOTT**
**WESTCOTT ELECTRIC STAFF 401K**

Item    Location (address)
**REFER TO IA904**

Coverage is provided only for the Crime Coverage for which a Limit of Insurance is shown below:

| Coverage Forms Forming Part of This Coverage Part | Limit of Insurance | Deductible Amount |
|---|---|---|
| Employee Dishonesty Coverage Form A | $100,000 | $500 |
| Forgery or Alteration Coverage Form B | $ | $ |
| Theft, Disappearance and Destruction Coverage Form C | | |
|    Loss Inside the Premises | $ | $ |
|    Loss Outside the Premises | $ | $ |
| Robbery and Safe Burglary Coverage Form D | | |
|    Loss Inside the Premises | $ | $ |
|    Loss Outside the Premises | $ | $ |
|    Safe Burglary | $ | $ |
| Premises Burglary Coverage Form E | $ | $ |
| Other | | |
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:
**CA401      01/86      CR1000      10/90      CR0001      01/86      CR1027      01/86**

Cancellation of Prior Insurance: By acceptance of this Coverage Part you give us notice canceling prior to policy or bond No,

**CPP 091 44 23**

the cancellation to be effective at the time this Coverage Part becomes effective,

Case ID: 170800994

**CA 501 01 92**

**THIS ENDORSEMENT** CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

> COMMERCIAL PROPERTY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL CRIME COVERAGE PART

A.  **Special Per Occurrence Deductible**

1.  If an "occurrence" happens to Covered Property under the Commercial Property Coverage Part and to Covered Property under at least one of the following:

    a.  The Commercial Inland Marine Coverage Part, and

    b.  The Commercial Crime Coverage Part;

    the most we will deduct from any loss or damage in any one "occurrence" is the deductible indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

2.  This endorsement does not apply to any of the forms listed in Paragraphs **a.** and **b.**:

    a.  **Electronic Data Processing Coverage Form, D. Deductible, 2. Specified Losses**
    **Jewelers Block Coverage Form**
    **Water Backup from Sewers, Drains, Septic Systems or Sump Pumps Endorsement**
    **Windstorm or Hail Percentage Deductible Form**
    **Earthquake and Volcanic Eruption Endorsement**
    **Earthquake and Volcanic Eruption Endorsement (Sublimit Form)**
    **Flood Coverage Endorsement**
    **Equipment Breakdown Coverage (Including Production Equipment)**
    **Equipment Breakdown Coverage (Excluding Production Equipment)**
    **Employee Dishonesty Coverage Form**
    **Forgery or Alteration Coverage Form**

    b.  ☐ **Other** _____

B.  **Definition**

For the purpose of this endorsement only, the following definition is added to:

1.  **COMMERCIAL PROPERTY CONDITIONS,**

2.  **CRIME GENERAL PROVISIONS FORM,** and

3.  **COMMERCIAL INLAND MARINE CONDITIONS;**

**"Occurrence"** means all loss, damage, or a sequence of loss or damage, casualties or disasters arising from a single happening or event.

Case ID: 170800994



**The Cincinnati Casualty Company**
A Stock Insurance Company

Headquarters: 6200 S. Gilmore Road, Fairfield, OH 45014-5141
Mailing address: P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# COMMON POLICY DECLARATIONS

Billing Method: AGENCY BILL

POLICY NUMBER   EPP 017 21 82 / EBA 017 21 82

NAMED INSURED WESCOTT ELECTRIC CO AND JAMES WESCOTT AND WILLIAM WESCOTT
PO BOX 278

ADDRESS          GLEN RIDDLE, PA 19037-0278
(Number & Street,
Town, County,
State & Zip Code)

**Previous Policy Number:**
CPP1068752

**Policy Period:**   At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
Policy number: EPP 017 21 82          FROM: 01-31-2013   TO: 01-31-2016

**Automobile and / or Garage**
Policy number: EBA 017 21 82          FROM: 01-31-2013   TO: 01-31-2014

Agency   BIDDLE & COMPANY INSURANCE BROKERS 37-113
City   NEWTOWN SQUARE, PA

**Legal Entity / Business Description**

ORGANIZATION (ANY OTHER)

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/08 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4111PA | 11/09 | PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4189PA | 04/99 | IMPORTANT NOTICE |
| IA4238 | 01/08 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4295PA | 08/06 | PENNSYLVANIA WARNING NOTICE |
| IA4313PA | 07/09 | PENNSYLVANIA CHANGES - ACTUAL CASH VALUE |
| IA4314PA | 07/09 | PENNSYLVANIA CHANGES |
| IA4408 | 03/12 | NOTICE TO POLICYHOLDERS INJURY OR DAMAGE TO OR RESULTING FROM YOUR WORK AND INJURY OR DAMAGE RESULTING FROM YOUR PRODUCT |
| IAQ4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IL0022 | 05/87 | EFFECTIVE TIME CHANGES - REPLACEMENT OF 12 NOON |
| IL0910 | 07/02 | PENNSYLVANIA NOTICE |
| FMQ502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GAQ532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| MAQ559 | 05/10 | CONTRACTORS' EQUIPMENT (AND TOOLS) COVERAGE PART DECLARATIONS |
| MAQ573 | 06/07 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS |
| MAQ560 | 06/07 | INSTALLATION FLOATER COVERAGE PART DECLARATIONS |
| CAQ516 | 03/09 | CRIME AND FIDELITY COVERAGE PART DECLARATIONS (COMMERCIAL ENTITIES) |

IAQ509 01 12

Case ID: 170800994

FORMS APPLICABLE TO ALL COVERAGE PARTS:
AAQ505PA   03/06  BUSINESS AUTO COVERAGE PART DECLARATIONS

03-07-2013 09:51

Countersigned _____  By  _____
                         (Date)                        (Authorized Representative)

IAQ509 01 12                                                    Page  2 of  2

EPP 017 21 82 / BBA 017 21 82

Case ID: 170800994

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections and Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer of Your Rights and Duties Under this Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

Case ID: 170800994

# SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER:  EPP 017 21 82 / EBA 017 21 82          Effective Date: 01-31-2013

Named Insured:  WESCOTT ELECTRIC CO AND JAMES WESCOTT AND WILLIAM WESCOTT

### THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | |
|---|---|
| Commercial Property Coverage Part     W/EBC | $     3,700 |
| Commercial General Liability Coverage Part | $    16,508 |
| Commercial Auto Coverage Part | $    16,340 |
| Commercial Umbrella / Excess Liability Coverage Part | $ |
| CRIME AND FIDELITY COVERAGE PART | $       297 |
| CONTRACTORS EQUIPMENT SCHEDULED | $       574 |
| CONTRACTORS EQUIPMENT SUPPLEMENTAL COVERAGES | $     1,221 |
| ELECTRONIC DATA PROCESSING EQUIPMENT | $       250 |
| INSTALLATION FLOATER | $     1,800 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Terrorism Coverage | $       216 |
| Installment Charge | $        18 |
| ANNUAL TOTAL PAYMENTS | $    40,924 |

| | First Installment | Remaining Installment(s) |
|---|---|---|
| QUARTERLY | 10,231 | 10,231 |

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

IA 102 A 09 08

Case ID: 170800994

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

> COMMERCIAL PROPERTY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART

A. **Special Per Occurrence Deductible**

 1. If an "occurrence" happens to Covered Property under the Commercial Property Coverage Part and to Covered Property under at least one of the following:

    a. The Commercial Inland Marine Coverage Part, and

    b. The Crime and Fidelity Coverage Part;

    the most we will deduct from any loss or damage in any one "occurrence" is the deductible indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS**.

 2. This endorsement does not apply to any of the forms listed in Paragraphs a. and b.:

    a. \* **Electronic Data Processing Coverage Form, Section III, 2. Deductible, a.(2) Specified Losses Deductible**

       \* **Water Backup from Sewers, Drains, Septic Systems or Sump Pumps Endorsement**

       **Windstorm or Hail Percentage Deductible Form**

       **Earthquake and Volcanic Eruption Endorsement**

       **Earthquake and Volcanic Eruption Endorsement (Sub-Limit Form)**

       **Flood Coverage Endorsement**

       **Equipment Breakdown Coverage (Including Production Equipment)**

       **Equipment Breakdown Coverage (Excluding Production Equipment)**

       \* **Temperature Change Coverage Form**

       **Commercial Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft, 2. Forgery or Alteration, 6. Computer Fraud and 7. Funds Transfer Fraud**

       **Crime Expanded Coverage (XC®) Coverage or Expanded Coverage Plus Forms, A. Insuring Agreements, 1. Employee Theft and 2. Forgery or Alteration**

       **Government Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft – Per Loss Coverage, 2. Employee Theft – Per Employee Coverage, 3. Forgery or Alteration, 7. Computer Fraud and 8. Funds Transfer Fraud**

       \* Or such coverage as provided in the CinciPlus® Commercial Property or Commercial Property Power Expanded Coverage or Expanded Coverage Plus Forms

    b. ☐ Other

Case ID: 170800994

**B. Definition**

For the purpose of this endorsement only, any definition of "occurrence" is deleted in its entirety and the following definition is added to:

1.  **COMMERCIAL PROPERTY CONDITIONS,**
2.  **COMMERCIAL INLAND MARINE CONDITIONS,**
3.  **COMMERCIAL CRIME COVERAGE FORM,**
4.  **CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM, and**
5.  **GOVERNMENT CRIME COVERAGE FORM:**

**"Occurrence"** means all loss, damage, or a sequence of loss or damage, casualties or disasters arising from a single happening or event.

Case ID: 170800994

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
FARM COVERAGE PART
MACHINERY AND EQUIPMENT COVERAGE PART

A. For insurance provided under the:

Commercial Inland Marine Coverage Part
Commercial Property Coverage Part
Crime and Fidelity Coverage Part
Machinery and Equipment Coverage Part

The **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY** Common Policy Condition is replaced by the following:

**F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

If you die, this Coverage Part will remain in effect as provided in **1.** or **2.** below, whichever is later:

1. For 180 days after your death regardless of the policy period shown in the Declarations, unless the insured property is sold prior to that date; or

2. Until the end of the policy period shown in the Declarations, unless the insured property is sold prior to that date.

Coverage during the period of time after your death is subject to all provisions of this policy including payment of any premium due for the policy period shown in the Declarations and any extension of that period.

B. For insurance provided under the:

Commercial Inland Marine Coverage Part
Commercial Property Coverage Part
Farm Coverage Part

The following is added to the **LOSS PAYMENT** Loss Condition and supersedes any provision to the contrary:

NOTICE OF ACCEPTANCE OR DENIAL OF CLAIM

1. Except as provided in **3.** below, we will give you notice, within 15 working days after we receive a properly executed proof of loss, that we:

   a. Accept your claim;

   b. Deny your claim; or

   c. Need more time to determine whether your claim should be accepted or denied.

   If we deny your claim, such notice will be in writing, and will state any policy provision, condition or exclusion used as a basis for the denial.

   If we need more time to determine whether your claim should be accepted or denied, the written notice will state the reason why more time is required.

2. If we have not completed our investigation, we will notify you again in writing, within 30 days after the date of the initial notice as provided in **1.c.** above, and thereafter every 45 days. The written notice will state why more time is needed to investigate your claim and when you may expect us to reach a decision on your claim.

3. The notice procedures in **1.** and **2.** above do not apply if we have a reasonable basis, supported by specific information, to suspect that an insured has fraudulently caused or contributed to the loss by arson or other illegal activity. Under such circumstances, we will notify you of the disposition of your claim within a period of time reasonable to allow full investigation of the claim, after we receive a properly executed proof of loss.

IA 4314 PA 07 09                    Includes copyrighted material of ISO
                                    Properties, Inc., with its permission.

Case ID: 170800994

## SIGNATURE ENDORSEMENT

IN WITNESS WHEREOF, this policy has been signed by our President and Secretary in the City of Fairfield, Ohio, but this policy shall not be binding upon us unless countersigned by an authorized representative of ours. The failure to countersign does not void coverage in Arizona, Virginia and Wisconsin.

Secretary                                                                 President

The signature on any form, endorsement, policy, declarations, jacket or application other than the signature of the President or Secretary named above is deleted and replaced by the above signatures.

IAQ4338 05 11

# THE CINCINNATI CASUALTY COMPANY

A Stock Insurance Company

## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER:       EPP 017 21 82
Named Insured is the same as it appears on the Common Policy Declarations unless otherwise stated here.

Loc.  (address)
PER STATEMENT OF VALUES ON FILE
REFER TO IA904

| | COVERAGE PROVIDED | | | | OPTIONAL COVERAGES Applicable only when an entry is made | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | Business Income Indemnity | | |
| Item | Coverage | Limits | Coin-surance | Covered Cause Of Loss | Inflation Guard (%) | Replace-ment Cost (x) | Replace-ment Cost Incl. Stock (x) | Agreed Value (x) | Monthly Limit (fraction) | Maximum Period (X) | Extended Period (Days) |
| | BLANKET BUILDING | 1,600,000 | 100% | SPECIAL | | X | | | | | |
| 1-1 | BUSINESS PERSONAL PROPERTY | 200,000 | 80% | SPECIAL | | X | | | | | |
| 1-1 | BUSINESS INCOME W/EXTRA EXPENSE (b) | 50,000 | | SPECIAL | | | | | 1/4 | | |
| 1-2 | BUSINESS INCOME W/O EXTRA EXPENSE (c) | 40,800 | | SPECIAL | | | | | 1/4 | | |

DEDUCTIBLE: $500.00 unless otherwise stated $

MORTGAGE HOLDER
Item          Name and Address

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:
| | | |
|---|---|---|
| FM101 | 04/04 | BUILDING AND COMMERCIAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS) |
| FA4024 | 04/04 | NOTICE TO POLICYHOLDERS COMMERCIAL PROPERTY COVERAGE PART EDITION 04/04 |
| FA4013PA | 11/02 | PENNSYLVANIA CHANGES - ACTUAL CASH VALUE |
| FA4028PA | 11/05 | PENNSYLVANIA CHANGES |
| FA4042 | 11/07 | PROPERTY COVERAGE PART AMENDATORY ENDORSEMENT |
| FA4053 | 04/06 | CINCIPLUS™ COMMERCIAL PROPERTY EXPANDED COVERAGE (XC™) PLUS ENDORSEMENT SUMMARY OF COVERAGE LIMITS |
| FA450 | 11/04 | COMMERCIAL PROPERTY CONDITIONS |
| FA480 | 04/04 | LOSS PAYABLE PROVISIONS |
| FA250 | 09/09 | CINCIPLUS® COMMERCIAL PROPERTY  XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT |
| FA244 | 05/11 | EQUIPMENT BREAKDOWN COVERAGE (EXCLUDING PRODUCTION MACHINERY) |
| FA212 | 04/04 | BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM |
| FA213 | 04/04 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |

Case ID: 170800994

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM
## (INCLUDING SPECIAL CAUSES OF LOSS)

## TABLE OF CONTENTS

SECTION A. COVERAGE............................................................................................................................ 3

1. Covered Property............................................................................................................................. 3
   a. Building..................................................................................................................................... 3
   b. Outdoor Signs........................................................................................................................... 3
   c. Outdoor Fences......................................................................................................................... 3
   d. Business Personal Property........................................................................................................ 3

2. Property Not Covered...................................................................................................................... 4
   a. Accounts, Deeds, Money or Securities ..................................................................................... 4
   b. Animals...................................................................................................................................... 4
   c. Automobiles............................................................................................................................... 4
   d. Contraband ............................................................................................................................... 4
   e. Electronic Data.......................................................................................................................... 4
   f. Excavations, Grading & Backfilling............................................................................................. 4
   g. Foundations ............................................................................................................................. 4
   h. Land, Water or Growing Crops .................................................................................................. 4
   i. Paved Surfaces ......................................................................................................................... 4
   j. Property While Airborne or Waterborne ..................................................................................... 4
   k. Pilings or Piers .......................................................................................................................... 4
   l. Property More Specifically Insured............................................................................................. 4
   m. Retaining Walls.......................................................................................................................... 4
   n. Underground Pipes, Flues or Drains........................................................................................... 4
   o. Valuable Papers & Records and Cost to Research..................................................................... 4
   p. Vehicles or Self-Propelled Machines.......................................................................................... 5
   q. Property While Outside of Buildings ......................................................................................... 5

3. Covered Causes of Loss ................................................................................................................ 5
   a. Risks of Direct Physical Loss .................................................................................................... 5
   b. Exclusions................................................................................................................................. 5
   c. Limitations ................................................................................................................................ 10

4. Additional Coverages..................................................................................................................... 11
   a. Change in Temperature or Humidity .......................................................................................... 11
   b. Debris Removal ......................................................................................................................... 11
   c. Fire Department Service Charge ................................................................................................ 12
   d. Fire Protection Equipment Recharge .......................................................................................... 13
   e. Inventory or Appraisal ............................................................................................................... 13
   f. Key and Lock Expense .............................................................................................................. 13
   g. Ordinance or Law ...................................................................................................................... 13
   h. Pollutant Clean Up and Removal................................................................................................ 14
   i. Preservation of Property............................................................................................................. 14
   j. Rewards..................................................................................................................................... 15

5. Coverage Extensions..................................................................................................................... 15
   a. Accounts Receivable.................................................................................................................. 15

Includes copyrighted material of ISO Properties, Inc.,
with its permission.  Includes copyrighted material with
permission of American Association of Insurance Services, Inc.

FM 101 04 04

Page 1 of 35

Case ID: 170800994